No. 4589.

(Court of Appeal, Parish of Orleans.)

ANGELO SANSONE VS. W. J. BRADY, ET ALS.

Issues of fact only are involved herein.

Appeal from Civil District Court, Division "D."

E. H. McCaleb, Jr., for Plaintiff and Appellee.

Dunkelspiel, Hart & Davey; Wilkinson, Dymond, Hubert and Block, for Defendants and Appellants.

DUFOUR, J. A judgment creditor of Joseph Beninate having issued a fi fa, against the contents of the grocery store at No. 1000 Girod Street, Angelo Sansone enjoined the seizure and sale of the property on the ground that he had bought the same from the judgment debtor by notarial act on March 23, 1907, and claimed damages for the alleged illegal seizure.

The creditor answered, claiming that the alleged sale was a simulated or fraudulent transfer by an insolvent debtor, and he has taken this appeal from a judgment, maintaining the injunction and condemning him to pay damages in the sum of $100.

The act of sale stated that the purchase price was $450, paid cash, but in point of fact, the money was paid on March 29th; there is no testimony to contradict the declaration to that effect, of Sansone, his brother and Beninate.

There is no dispute about the law as laid down in 50 An. 338:

"While fraud is never to be presumed, courts of justice recognize the cunning concealment in which it shrouds its devious practices and the difficulty of tracing it by direct proof. Hence, they are warranted in giving weight to all circumstances, reasonable deductions, inferences and conclusions to be drawn from facts proven which are of a character to force conviction on the mind, and by which they are justified in finding fraud."

Defendant's counsel quotes from Bump on Fraudulent Conveyances, p. 78 (in which he terms such circumstances, "badges of fraud"), as follows:

"Any one badge simply may impeach a conveyance, and, on

—166—

the other hand, several badges may unite and the transaction still be protected. The concurrence of several badges will, however, always make out a strong case.''

Adopting Bump's term, counsel suggests the presence of ten badges of fraud in this case.

1, 2, 3, 4:

That the defendant in execution was insolvent to the knowledge of the purchaser, that the sale was one *ommium bonorum*, and to a man not in the trade, and the purchaser had no means of payment.

The record shows that Beninate had been sued, but does not disclose that he was insolvent to the knowledge of Sansone, and it is a fact, that Mr. Dymond, his attorney in all the suits, deemed it safe to advance costs and loan him money to an amount of $300.

The sale was naturally of the whole business, stock, etc., and there is nothing unusual in the manner in which it was effected.

The fact that Sansone was a barber by trade does not necessarily cast suspicion on his purchase of a grocery; many men change occupations, and Sansone appears to have employed Beninate and one Bagusa to help him with the business.

The charge of Sansone's pecuniary inability is not sustained; he has a barber shop, a half interest in real estate, and he borrowed some of the money from his brother.

5, 6, 7, 8, 9:

That the mode of payment was out of the usual course, and no inventory was taken; that both parties were Italians and friends, and the lease and license were still in Beninate's name at the time of the seizure.

Counsel for plaintiff successfully answers the above as follows:

''Badge No. 5. The fact that no money passed at the time of the paper transfer on March 23d, and that it did pass six days thereafter, is evidence in favor of the good faith of the transaction; the reason for the delay being the trouble about the licenses, and because the vendor did not have the necessary amount. The sale was completed on March 28th. Relative to the licenses, it seems that the brewery advanced the money to Beninate, and Sansone agreed to stand in Beninate's shoes by turning over the rebate to the brewery.

"Badge No. 6. The want of an inventory by itself is not sufficient to set aside a sale for fraud. Good will is an element, and besides, four or five months after the sale, this *perishable* stock sold for $275, after being in the possession of the Constable for quite a time.

"Badge No. 7. Friendship of the parties is a factor only in connection with other elements of fraud, but not by itself.

"Badge No. 8. Because the licenses and the lease were in Beninate's name, the *bona fides*, was not changed. Sansone was paying them. This is evidence in favor of, not against, the transaction.

"Badge No. 9. Is partly frivolous, and partly answered by the evidence."

10:

That Joseph Beninate remained in absolute possession and control of store, stock and trade, stayed and slept there.

It is shown that Sansone took possession and employed Beninate and Bagusa to help him run it. The house was leased by Beninate, who lived in it with his family, and had a shoe shop there; the grocery part he subleased to Sansone, who paid him $27 a month.

The invoices show that the goods purchased were indifferently made in the name of Beninate, Bagusa and Sansone; sometimes Sansone gave the money, and at others Beninate used his credit, Sansone not being known to the merchants.

Though one witness swears that Sansone did not come to the grocery store, three others say that they saw him there several times.

Mr. Dymond says that Beninate suggested to him to put the grocery in Sansone's name, and Miss Donahue testified that Beninate tried to bribe her to tell the court that she rented her room from Sansone.

This, though denied by Beninate, may perhaps be true, but there is nothing fixing knowledge of these occurrences on Beninate or connecting him with them.

Without further reference to the evidence, we may say that some matters are not entirely explained, but this may be partly accounted by the facts that Sansone is an ignorant Italian. neither speaking nor even understanding English, and that it required an interpreter for his testimoy.

Another fact accounts for the evasive answers of Beninate,

and it is that most of the questions propounded to him referred to the business relations between Mr. Dymond and himself, and he seemed to be afraid of committing himself on that subject.

The suspicions arising from the occurrence of some of the alleged badges of fraud are not sufficiently strong to allow us to set aside the conclusions of fact of the trial judge, who saw, heard and questioned the witnesses.

It has been our uniform rule, expressed in several cases, that the findings of fact of a trial judge will not be disturbed, unless flagrantly erroneous, in matters where charges of fraud are presented.

Judgment affirmed.

February 8, 1909.

Rehearing refused March 8, 1909.